**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6288**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD SAMUEL JACKSON, a/k/a Young,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Elizabeth Kay Dillon, District Judge. (5:03-cr-30093-EKD-4)

Argued: October 29, 2019                           Decided: March 10, 2020

Before KING, FLOYD, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge King and Judge Floyd joined.

**ARGUED:** Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

RUSHING, Circuit Judge:

When a defendant's sentence is vacated and the district court resentences the defendant to a term of incarceration less than the time he has already served, the defendant may have the option to "bank" the excess time served and credit that banked time toward a future sentence of incarceration imposed for violating the supervised release term of his sentence. In this case, we are presented not with a vacated sentence, but with a sentence reduction pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). The district court granted Ronald Samuel Jackson's motion for a reduced sentence under the First Step Act, reducing Jackson's sentence from 240 months' imprisonment and ten years of supervised release to time served (approximately 177 months' imprisonment) and eight years of supervised release. In reducing the sentence, the court rejected Jackson's request for a sentence of 120 months' imprisonment, which would have allowed Jackson to bank approximately 57 months toward a future sentence of incarceration if he violated his supervised release. The court reasoned that the need to protect the public and the need for deterrence dictated that Jackson not be given banked time to offset the penalties for future violations of his supervised release, including future crimes. Jackson argues that the district court abused its discretion by considering the possibility of banked time in determining an appropriate reduced sentence. Because we conclude that the district court acted within its discretion in considering banked time and imposing a sentence of time served, we affirm.

Ordinarily, a sentence of imprisonment is final and may not be modified once it has been imposed, except in narrow circumstances. 18 U.S.C. § 3582(c). One such circumstance is when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

The First Step Act of 2018 expressly permits sentencing modifications. § 404, 132 Stat. at 5222. As relevant here, the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act "reduced the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Fair Sentencing Act modified the drug quantities required to trigger mandatory minimum sentences for cocaine base (often referred to as crack cocaine) trafficking offenses; it increased the amount required to trigger the five-year mandatory minimum from 5 grams to 28 grams and increased the amount required to trigger the ten-year mandatory minimum from 50 grams to 280 grams. *See United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing Fair Sentencing Act, § 2, 124 Stat. at 2372). Section 3 eliminated the five-year mandatory minimum for simple possession of crack. *Id.* (citing Fair Sentencing Act, § 3, 124 Stat. at 2372).

The relevant provisions of the First Step Act apply to "a covered offense," which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed

before August 3, 2010." § 404(a), 132 Stat. at 5222. The First Step Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. Even if a defendant is eligible for a sentence reduction, however, the decision whether to grant a reduction is entrusted to the district court's discretion. § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

B.

Jackson was convicted on May 7, 2004 of conspiring to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Because of a prior drug conviction, Jackson faced a twenty-year mandatory minimum term of imprisonment and a ten-year minimum term of supervised release. *See* 21 U.S.C. §§ 841(b)(1)(A), 851. The presentence report calculated Jackson's Guidelines sentencing range as 188 to 235 months, increased to 240 months because of the mandatory minimum. The district court sentenced Jackson to the mandatory minimum of 240 months' imprisonment, to be followed by a ten-year term of supervised release. This Court affirmed. *See United States v. Jackson*, 166 Fed. App. 54 (4th Cir. 2006).

On January 26, 2019, Jackson moved in the district court for relief under Section 404 of the First Step Act. The parties agreed that Jackson was eligible for a sentence reduction, because his offense was committed before August 3, 2010 and the penalties applicable to his statute of conviction were modified by Section 2 of the Fair Sentencing

Act. In particular, because Section 2 increased the quantity of cocaine base required to trigger the statutory penalties in Section 841(b)(1)(A) from 50 grams to 280 grams, and Jackson was convicted of conspiring to possess 50 grams or more, Jackson was now subject to the penalties set forth in Section 841(b)(1)(B), which apply to convictions involving 28 grams or more of cocaine base. Under Section 841(b)(1)(B), Jackson's new statutory sentencing range was ten years to life imprisonment and at least eight years of supervised release.

By the time he moved for a sentence reduction, Jackson had already served approximately 177 months of his 240-month sentence. In his motion, Jackson requested that the district court reduce his sentence to the new statutory mandatory minimum of 120 months' imprisonment and eight years of supervised release. Jackson's new Guidelines range was 51–61 months, increased to 120 months because of the mandatory minimum. He argued that the court should reduce his sentence to the mandatory minimum of 120 months because his original sentence had been for the then-applicable mandatory minimum of 240 months. Jackson waived any hearing on his motion in order to expedite his immediate release.

The Government agreed that Jackson was eligible for immediate release but urged the district court to reduce his sentence to time served and eight years of supervised release. The Government objected to any sentence below time served because such a sentence would allow Jackson to "'bank' time to offset any future term of imprisonment that may be imposed upon a supervised release revocation." J.A. 30–31. The Government argued that allowing Jackson to bank time would leave the probation office and the court with no

5

real recourse in the event he violated the terms of his supervision and would undercut the rehabilitative aims of supervised release.

The district court determined that Jackson was eligible for relief under the First Step Act and that a sentence reduction was warranted. The court noted Jackson's request to be sentenced to 120 months and stated:

> Having considered the sentencing factors of 18 U.S.C. § 3553(a), the court will reduce his sentence to a sentence of time served, to be followed by an eight-year term of supervised release, but will not reduce his sentence below a sentence of time served. In particular, the need to protect the public and the need for deterrence dictate[] that a defendant not be allowed to "bank time," which could allow him to commit further crimes without the fear of imprisonment. *Cf. Miller v. Cox*, 443 F.2d 1019, 1021 (4th Cir. 1971) ("[T]he availability of credits against sentences for future crimes would provide a sense of immunity and an incentive to engage in criminal conduct."). In all likelihood, similar concerns underlie the express prohibition on a court's reduction of a sentence below time served when reducing based on a sentencing guideline amendment. *See* U.S.S.G. § 1B1.10(b)(1)(C) (directing that a reduction in a term of imprisonment pursuant to a guideline amendment "[i]n no event may . . . be less than the term of imprisonment the defendant has already served").

J.A. 39–40. The court also observed that other courts granting sentence reductions under the First Step Act had reduced sentences to time served, "even where a defendant already had served more than the applicable guideline range." J.A. 40. The court reduced Jackson's sentence to time served and eight years of supervised release. Jackson appealed.

## II.

As noted, this case comes to us on appeal from a sentence reduction under the First Step Act. The parties agree that we need not resolve various questions about the proper procedure to be followed in a First Step Act sentence reduction proceeding, either because the parties have not disputed them here or because, even though the parties disagree,

6

resolution of their dispute is not necessary to resolve this appeal. We agree and so leave those questions for another day.

The parties do dispute, however, the extent to which we should review the sentence reduction granted by the district court. The Government, borrowing from decisions reviewing sentence reductions under 18 U.S.C. § 3582(c)(2), would have us review for abuse of discretion. *See United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). Jackson agrees that we apply an abuse of discretion standard but would have us review his sentence modification for procedural and substantive reasonableness, as we do the district court's imposition of the original sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). We conclude that we need not resolve this debate either. "Even assuming (purely for argument's sake)," *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018), that we review a sentence reduction pursuant to the First Step Act for reasonableness under an abuse of discretion standard, none of Jackson's arguments convince us that his sentence reduction was unreasonable, as we explain below.

### III.

Jackson primarily argues on appeal that the district court abused its discretion by considering the possibility of banked time in reducing his sentence. Before the district court, Jackson requested the mandatory minimum sentence because his original sentence had been the then-applicable mandatory minimum, and he also renews this argument on

appeal, contending that the district court failed to consider the relevance of his original sentence. We address these arguments in turn.

A.

The concept of banked time in the federal prison system is most often associated with the credit a defendant receives for time spent in jail after his arrest but before his conviction and sentencing. In 18 U.S.C. § 3585(b), Congress provided that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences" as a result of (1) "the offense for which the sentence was imposed" or (2) "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." The statute awards credit "only for *presentence* restraints on liberty." *Reno v. Koray*, 515 U.S. 50, 56 (1995). The Attorney General, through the Bureau of Prisons (BOP), computes the amount of the credit in a particular case after the defendant begins his sentence. *United States v. Wilson*, 503 U.S. 329, 334 (1992).

Another circumstance in which the concept of crediting or banking time may arise occurs when a defendant's conviction is vacated. For example, if a defendant's conviction is set aside and the defendant is then retried and convicted of the same offense, the time served under the voided conviction must be credited toward the subsequently imposed sentence to avoid a double jeopardy violation. *North Carolina v. Pearce*, 395 U.S. 711, 718–719 (1969); *cf. Jones v. Thomas*, 491 U.S. 376, 382, 387 (1989) (crediting time served on one of two consecutive sentences after it became apparent that state law permitted only one of the sentences). But a defendant whose conviction has been vacated cannot credit

8

the time served on the voided conviction against a new sentence for a new crime. *Miller*, 443 F.2d at 1021. Similarly, this Court has declared it "unthinkable" that a defendant whose conviction is vacated could establish "a line of credit for future crimes," reasoning that "the availability of credits against sentences for future crimes would provide a sense of immunity and an incentive to engage in criminal conduct." *Id.* (internal quotation marks omitted).

Questions about banked time also arise in the context of supervised release. The Supreme Court has held that when a defendant's term of incarceration is partially vacated, the overserved time does not shorten his term of supervision. *United States v. Johnson*, 529 U.S. 53, 54 (2000). Even if a defendant's term of imprisonment should have ended sooner than it did, his term of supervised release does not begin until he is released from custody. *Id.* at 58. Although custodial and supervised release terms are components of one unitary sentence, *see United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018), they serve different purposes. The conditions of a defendant's supervised release are intended to provide the defendant with assistance in transitioning into community life. *Johnson*, 529 U.S. at 59. The rehabilitative objectives of supervised release "would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Id.*

BOP has created extensive regulations concerning its duty to calculate sentences, including the treatment of banked time. Among other things, BOP's regulations provide that "[a]ny prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the revocation term" when a defendant is sentenced to a term of incarceration for violating his supervised

9

release.  BOP Program Statement § 5880.28, *Sentence Computation Manual-CCCA of 1984* (1999) at 1-69.  For example, if a defendant's term of incarceration is partially vacated and as a result the defendant has served more time than necessary, the defendant may credit the excess time against future revocations of his supervised release term under the same sentence.  The question in this case is not the legality of this regulation or how BOP should apply it; rather, the question is whether a district court in a sentence reduction proceeding may take into account the defendant's potential to bank time against future supervised release violations.

B.

The district court here considered Jackson's ability to bank time against future supervised release revocations in its analysis of the need to protect the public and the need for deterrence, two factors a court considers under 18 U.S.C. § 3553(a) in imposing a sentence.  In particular, the district court declined to reduce Jackson's sentence below time served because the court was concerned that allowing Jackson to bank time would "allow him to commit further crimes without the fear of imprisonment."  J.A. 39.  Jackson argues that his sentence is procedurally unreasonable because the district court misapplied Section 3553(a)'s protection-of-the-public and deterrence factors in considering banked time and substantively unreasonable because banked time is an improper sentencing factor.  *See*, *e.g.*, *United States v. Clark*, 434 F.3d 684, 687–688 (4th Cir. 2006) (holding sentence unreasonable because it rested on a misapplication of Section 3553(a)(6)); *United States v. Montes-Pineda*, 445 F.3d 375, 378 (4th Cir. 2006) ("A sentence may be substantively unreasonable if the court relies on an improper factor . . . ." (internal quotation marks

10

omitted)). The arguments substantially overlap, requiring us to consider if, and how, a district court may consider banked time in reducing a sentence.

Logically, we first assess whether consideration of banked time in reducing a sentence is forbidden. Jackson identifies no authority forbidding a court from taking banked time into account, and we are aware of none. In fact, in the context of a sentence reduction based on a change in the Sentencing Guidelines, a Guidelines policy statement specifically prohibits the court from imposing a sentence of less than time served, presumably to avoid creating banked time. *See* U.S.S.G. § 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."); *see also* 18 U.S.C. § 3582(c)(2) (restricting courts' authority to reduce sentences based on changes to the Guidelines to reductions "consistent with applicable policy statements issued by the Sentencing Commission"). That restriction does not directly apply here, but it suggests that a district court is not entirely forbidden from considering the impact of banked time when deciding whether to reduce a defendant's sentence to time served or some lesser term.

More broadly, a defendant is not entitled to a sentence that would result in banked time. Even when a defendant's conviction itself is vacated, there are situations where the defendant will not receive credit for the time during which he was incorrectly incarcerated. For example, in *Johnson*, there was no doubt that the federal defendant's "term of imprisonment should have ended earlier than it did," but the Supreme Court held that the defendant was not entitled to credit his excess time served against his term of supervised release. 529 U.S. at 58. Likewise, in *Miller*, this Court reiterated that a state defendant is

11

not entitled to credit time served on a voided conviction against a new sentence for a new crime. 443 F.2d at 1021; *cf. id.* at 1022 (reasoning that, "where there is a strong indication that the defendant has been required to serve time for an offense he had not actually committed," a sentencing court may, "and ordinarily should," take into account time served on a voided sentence, but rejecting argument that the court must credit a new sentence for a new crime based on time served on a prior invalidated conviction). Here, Jackson's conviction was not invalidated, and a sentence of time served, although above his new Guidelines sentence of 120 months, was well within his new statutory sentencing range of 120 months to life. We cannot say that Jackson was entitled to a sentence that would provide him with banked time or that the district court was forbidden from considering the possibility of banked time when reducing Jackson's sentence.

Next, we must examine whether, in the context of a sentence reduction under the First Step Act, the district court permissibly considered the possibility of banked time in analyzing the Section 3553(a) factors of deterrence and protection of the public. Of course, a particular fact need not be mentioned specifically in Section 3553(a) to be considered in the court's sentencing calculus; many case-specific facts fit under the broad umbrella of the Section 3553(a) factors. *See United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020) ("Section 3553(a)'s broad language is consistent with the principle 'that district courts enjoy significant discretion in sentencing, provided, of course, that they devise reasonable sentences.'" (quoting *Clark*, 434 F.3d at 689 (Motz, J., concurring))). The possibility of banked time that may be used to satisfy or offset a future supervised release revocation sentence is relevant to at least two factors: whether the sentence imposed will "protect the

12

public from further crimes of the defendant" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B), (C).

Jackson argues that banked time is not relevant to these Section 3553(a) factors because a defendant can spend his banked time to offset only future supervised release revocation sentences, not to offset future sentences for new crimes. Because a defendant could be prosecuted for any new crime he commits, and if he is convicted his banked time could not be credited toward his new criminal sentence, the argument goes, banked time does not create a sense of immunity or an incentive to commit new crimes, therefore a sentence fashioned to prevent banked time is not necessary for deterrence or to protect the public.

While Jackson is correct that a defendant in these circumstances may credit banked time only against future supervised release revocation sentences, his conclusion does not follow. A district court can revoke a defendant's supervised release upon finding, by a preponderance of the evidence, that the defendant violated a condition of his supervision. *See* 18 U.S.C. § 3583(e)(3). Therefore, a district court may sentence a defendant to a revocation sentence for violating state, local, or federal law even though the defendant has not been convicted of that new offense. *See*, *e.g.*, *United States v. Armstrong*, 187 F.3d 392, 393 (4th Cir. 1999) (affirming revocation of supervised release even though defendant's drug and firearm charges were dismissed after he successfully excluded the evidence); *United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992) (affirming revocation of supervised release because evidence was sufficient to prove by a preponderance that defendant cultivated marijuana in violation of state and federal law); *see also* 18 U.S.C.

13

§ 3583(d) (requiring court to order, as a condition of supervised release, that defendant not commit another federal, state, or local crime). Similarly, a district court may revoke a defendant's supervised release upon finding that the defendant violated a condition of his release that overlaps with illegal conduct. *See*, *e.g.*, 18 U.S.C. § 3583(d) (requiring court to order, as a condition of supervised release, that defendant "refrain from any unlawful use of a controlled substance" and submit to drug tests); *id.* (requiring court to order, as a condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, "that the person comply with the requirements of that Act"). And when a defendant is convicted of a new crime while on supervised release, he may receive both a new sentence for the new offense and a revocation sentence. *See United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996) ("[T]he Double Jeopardy Clause does not prohibit the government from criminally prosecuting and punishing an offense which has formed the basis for revocation of a term of supervised release.").

We cannot agree, therefore, with Jackson's argument that the availability of banked time to offset a revocation sentence is irrelevant to deterring future offenses and protecting the public simply because a defendant in some circumstances may be subject to a new criminal sentence in addition to a revocation sentence for an offense. It is reasonable for a district court to think that the prospect of returning to prison under a revocation sentence would provide a measure of deterrence against future crimes of the defendant and thereby provide a measure of protection to the public. *Cf. United States v. Gullett*, 75 F.3d 941, 951 (4th Cir. 1996) (rejecting defendant's contention that sentencing court could not consider good-time credit when crafting a sentence, because argument would "reward the

14

defendant who says 'I'm going to be a trouble-maker'" in the future). Moreover, the threat of consequences for violating the terms of a defendant's supervision is important to the rehabilitative purposes of supervised release, including assisting the defendant in learning to become a law-abiding member of the community. *See Johnson*, 529 U.S. at 59–60. Although the district court here was focused on deterring criminal conduct, we acknowledge that revocation also can be a tool for encouraging compliance with conditions not directly related to criminal conduct but comparably important in a defendant's rehabilitation. *See*, *e.g.*, *United States v. Satterfield*, 530 Fed. App. 229, 230 (4th Cir. 2013) (per curiam) (affirming revocation of supervised release for testing positive for cocaine and absconding from residential re-entry center); *United States v. Terry*, 178 Fed. App. 232, 233 (4th Cir. 2006) (per curiam) (affirming revocation of supervised release for failure to report to probation officer and work regularly).

Thus, we conclude that the district court did not abuse its discretion in considering Jackson's ability to bank time when reducing his sentence and consideration of that fact did not render Jackson's reduced sentence unreasonable. Jackson also criticizes the district court for citing *Miller* and the policy statement in Section 1B1.10(b)(1)(C) of the Sentencing Guidelines, neither of which control here. However, the district court appropriately acknowledged that those authorities were not controlling but merely supportive of its evaluation of the impact of banked time. *See* J.A. 39–40. Finally, we note that the district court, citing "the need to avoid unwarranted sentencing disparities," also observed that other courts granting reductions under the First Step Act have reduced sentences to time served, even where a defendant already has served more than the

15

applicable Guidelines range. J.A. 40. Although we agree with Jackson that this factor concerns only "defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), we do not conclude that the district court abused its discretion in considering these two cases for the limited purpose of evaluating how those courts handled requests to bank time in a First Step Act sentence reduction proceeding.

C.

Jackson also contends that the district court abused its discretion in rejecting his request for a sentence of 120 months, which is his new Guidelines sentence and the new statutory mandatory minimum, because he originally received a Guidelines sentence, which was the then-applicable mandatory minimum. This was the only argument Jackson presented to the district court in favor of his requested reduction to a sentence of 120 months, and Jackson does not identify any other facts or Section 3553(a) factors that he contends would support a sentence lower than time served. *Cf. Martin*, 916 F.3d at 396 (reversing the denial of a sentence reduction under Section 3582(c)(2) where district court did not address the "complexity" of the defendant's case, which included a "mountain of new mitigating evidence"). Contrary to Jackson's argument, a defendant in a sentence reduction proceeding is not entitled to a sentence at "a point within the new lower Guidelines range that is 'proportional' to the point previously chosen in the older higher Guidelines range," nor is there "any law or any convincing reason" for presuming that a purportedly "proportional" reduction would lead to the "right" sentence. *Chavez-Meza*, 138 S. Ct. at 1966. Moreover, under the First Step Act, even after the district court found Jackson eligible for a sentence reduction, the court was not obligated to reduce Jackson's

16

sentence at all. *See* § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

The district court acknowledged that Jackson's original sentence was a within-Guidelines sentence at the old mandatory minimum, but the court explained why it believed a Guidelines sentence of 120 months was inappropriate and why a sentence of time served better reflected the Section 3553(a) factors. The court calculated the new Guidelines sentence, stated that it had considered the Section 3553(a) factors, responded to all of the arguments made by Jackson and the Government, and explained that the need to protect the public and the need for deterrence "in particular" warranted a sentence of time served, so as to avoid awarding Jackson with banked time. J.A. 39. Even assuming—again, purely for the sake of argument—that a district court in a First Step Act sentence reduction proceeding has equivalent duties to a court initially sentencing a defendant, *but cf. United States v. Smalls*, 720 F.3d 193, 198 (4th Cir. 2013) (reasoning that 18 U.S.C. § 3553(c), which requires a sentencing court to explain its reasoning when initially sentencing a defendant, does not apply to § 3582(c)(2) sentence modification proceedings), what the district court did here was sufficient. We are satisfied that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Chavez-Meza*, 138 S. Ct. at 1967 (first alteration in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

\* \* \*

For the foregoing reasons, we conclude that the district court did not abuse its discretion in reducing Jackson's sentence to time served and ordering his immediate release

17

but denying his request to bank time for credit against future supervised release violations.

The judgment of the district court is

*AFFIRMED.*

18